## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARTIN J. GORDON, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) Case No. CIV-16-1327-F ) |
| ST. JAMES TRANSPORTS, LLC, L. DAVIS TRANSPORTS, LLC, and DONALD C. McCRITE, | ) ) ) ) |
| Defendants. | ) |

## **ORDER**

A number of motions are before the court. This order addresses them in the following sequence

-- Doc. no. 36, defendant Davis Transports, LLC's motion for summary judgment, with plaintiff's response brief at doc. no. 44, and Davis Transports' reply brief at doc. no. 50. (Part I of this order.)

-- Doc. no. 46, plaintiff's motion for leave to file a dismissal without prejudice as to defendant L. Davis Transports, LLC, to which no response brief was filed. (Part II of this order.)

-- Doc. no. 35, defendant St. James Transports, LLC's and defendant Donald C. McCrite's motion for partial summary judgment, with plaintiff's response brief at doc. no. 45, and these defendants' reply brief at doc. no. 49. (Part III of this order.)

-- Doc. no. 37, plaintiff Martin J. Gordon's motion for an order declaring the damages cap of 23 O.S. 2011 § 62.1 unconstitutional, with defendant St. James Transports, LLC's and defendant Donald C. McCrite's response brief at doc. no. 42. No reply brief was filed. (Part IV of this order.)

Introduction

This action arises out of a four-vehicle accident on April 9, 2015, on Interstate 40 westbound near Portland Avenue in Oklahoma City, Oklahoma. At the time, defendant Donald C. McCrite (McCrite) was driving a tractor and trailer owned by L. Davis Transports, LLC (Davis Transports). The tractor and trailer was leased to St. James Transports, LLC (St. James), McCrite's employer. The collision occurred in stop-and-go traffic during the evening rush hour. Traffic came to a stop and McCrite rear-ended the vehicle in front of him, which was driven by plaintiff Martin J. Gordon (Gordon). Gordon's vehicle hit the vehicle in front of it, and that vehicle hit the vehicle in front of it, resulting in the four-vehicle accident.

Standards

Under Rule 56, Fed. R. Civ. P., summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983). The mere existence of a scintilla of evidence in support of the plaintiff's position is

insufficient to avoid a properly supported summary judgment motion; there must be evidence on which the jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

At the summary judgment stage, a movant may make a prima facie demonstration by pointing out to the court a lack of evidence for the non-movant on an essential element of the non-movant's claim. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998), citing Celotex, 477 U.S. at 322-23. If the movant carries this initial burden, the non-movant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the non-movant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant. Adler, *id*. To accomplish this, the facts relied on by the non-movant must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated in those documents. *Id*., citing Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992).

Part I

Davis Transports' Motion for Summary Judgment

*(Doc. no. 36)*

Davis Transports moves for summary judgment in its favor on all claims alleged against it in this action. Plaintiff's response brief states that he does not challenge the motion, and that he intends to move to dismiss Davis Transports without prejudice. (The court addresses the motion to dismiss next.) Davis Transports replies, arguing that because plaintiff expressly does not challenge the motion, Davis Transports is entitled to summary judgment. In reply to plaintiff's stated intention to file a motion to dismiss Davis Transports, Davis Transport states

that that it is too late for a dismissal without prejudice,[1] as that result would leave open the possibility that plaintiff might re-file this action against Davis Transports.

Plaintiff has expressly confessed that he does not challenge Davis Transports' motion for summary judgment, and the motion is **GRANTED** on that basis.

Part II

Plaintiff's Motion for Leave to File

A Dismissal Without Prejudice as to Defendant Davis Transports

*(Doc. no. 46)*

No response was filed with respect to plaintiff's motion for leave to file a dismissal without prejudice with respect to defendant Davis Transports. Regardless, this motion is moot in light of the court's ruling in Part I, above, that Davis Transports is entitled to summary judgment in its favor. Plaintiff's motion for leave to file a dismissal without prejudice as to defendant Davis Transports is **DENIED** as moot.

Part III

Defendants St. James Transports' and Donald McCrite's

Motion for Partial Summary Judgment

*(Doc. no. 35)*

Defendants'[2] motion for partial summary judgment makes two arguments. The first is that under Jordan v. Cates, 935 P.2d 289, 293 (Okla. 1997), and N.H. v. Presbyterian Church, 998 P.2d 592, 600 (Okla. 1999), St. James is entitled to judgment in its favor on all direct negligence claims alleged against it in this action. Defendants' second argument is that summary judgment should be entered in favor

---

[1] This action is set for trial on the court's December 5, 2017 docket.

[2] In this part of this order, "defendants" refers to St. James and McCrite.

4

of the defendants on plaintiffs' claim for punitive damages. The court begins with the punitive damages argument.

*Punitive Damages Claims*

The motion clarifies that the complaint does not seek punitive damages against McCrite, so that McCrite joins in this part of the motion only out of an abundance of caution. *See*, doc. no. 1, ¶ 40. (seeking punitive damages against St. James and Davis Transports). There is no dispute regarding the fact that punitive damages are not sought against McCrite. *See*, defendants' Undisputed Material Fact (UMF) No. 20 (plaintiff is not seeking punitive damages against McCrite; admitted by plaintiff). There is no need to grant summary judgment on any punitive damages claims alleged against McCrite because there are no such claims.

The next question is whether the claim for punitive damages against St. James survives the motion for summary judgment. Defendants argue the punitive damages claim does not survive, citing Jordan, 935 P.2d 289 at 293. Defendants argue that under Jordan, any direct negligence claims alleged against St. James must go out of the case as a matter of law, leaving no predicate basis upon which to award punitive damages against St. James.

Plaintiff responds by arguing that this issue (*i.e.* the argued-for unfair impact of Jordan, at least as that case is interpreted by defendants, on any punitive damages to be awarded in this case) is one of the reasons Jordan should not apply. While Jordan anticipates that an employer may be liable for punitive damages based on the misconduct of its employee,[3] plaintiff argues that this principle is of no use to him

---

[3]Jordan states, "Our holding today is limited to those situations where the employer stipulates that liability, if any, would be under the respondeat superior doctrine, thereby making any other theory for imposing liability on the employer unnecessary and superfluous." 935 P.2d at 293. Jordan then states, "Because vicarious liability can include liability for punitive damages, the theory of negligent hiring and retention imposes no further liability on employer." *Id.* Thus, it is clear that at least certain types of punitive damages remain recoverable against an employer after Jordan.

5

because plaintiff does not seek punitive damages against employee McCrite. Plaintiff argues that it would violate Article 2, § 6 of the Oklahoma Constitution (which provides that the courts shall afford a remedy for every wrong) to apply Jordan in the circumstances of this case, as doing so would leave plaintiff with no way to recover punitive damages against St. James, the only defendant whose conduct plaintiff alleges merits punishment.

Having noted these arguments regarding Jordan's impact on the recovery of punitive damages, the court puts this issue aside in favor of addressing defendants' *other* argument for judgment in St. James' favor on plaintiff's claims for punitive damages, an argument which turns out to be dispositive.

In this alternative argument, defendants contend there is no record evidence to support an award of punitive damages. Having pointed out this lack of evidence, the burden shifts to the plaintiff to set forth specific facts admissible in evidence at trial, from which a rational trier of fact could find that plaintiff is entitled to punitive damages. Adler, 144 F.3d at 671. To prevail on his claim for punitive damages, plaintiff Gordon must therefore identify evidence which shows that there is at least a triable issue regarding conduct by St. James which was either in reckless disregard of the rights of another, or which constitutes an intentional act with malice towards others. *See*, 23 O.S. 2011 § 9.1 (punitive damages awards by jury).

Pertinent to this issue, the court finds the following facts to be undisputed on this record.[4]

-- McCrite has operated a tractor and trailer for approximately 48 to 49 years. During his work as a professional truck driver, he has been involved in only two prior accidents. One involved a drunk driver losing control and striking McCrite's

---

[4] Plaintiff purports to dispute some of defendants' numbered facts without identifying any evidence to support such a dispute, thereby failing to show an actual dispute.

6

vehicle. The other occurred when a vehicle was parked improperly on the roadway and McCrite struck the vehicle. Defendants' UMF No. 5.

-- On the morning of the accident, McCrite performed his pre-trip inspection and found no issues with his tractor and trailer, including his tires. Defendants' UMF No. 8.

-- The speed limit where the accident occurred was 60 miles per hour. However, at the time of the accident, McCrite was in stop-and-go rush hour traffic. McCrite slowed to approximately 45 miles per hour before he saw plaintiff stopped in the roadway. He then slowed to around 20 or 25 miles per hour, with his foot on the brake, immediately before the accident. For whatever reason, McCrite was unable to bring his vehicle to a stop prior to contact with plaintiff's vehicle. Defendants' UMF No. 12, 14, 15.

-- St. James inspected the brakes on the rig operated by McCrite on a daily, weekly, monthly and yearly basis. No problems were found with the brakes immediately prior to the accident. St. James and McCrite inspected the tires on McCrite's rig prior to and following the accident and found no problems. The "super single" drive tires were replaced on McCrite's tractor with new tires in December of 2014, four months before the accident. Defendants' UMF Nos. 16, 17.

-- The tractor which McCrite was driving at the time of the accident was equipped with super-single tires but the trailer was not equipped with super single tires. Before the time of the accident, McCrite had operated the tractor and trailer, including operation of the tractor with super-single tires, for a period of four months. There is no difference in training with respect to operating a tractor and trailer when a tractor has super-single tires rather than dual tires, as was the case here. Defendants' UMF Nos. 6,7.

-- Plaintiff's trucking expert (David A. Stopper, report at doc. no. 35-3), did not criticize or otherwise offer any opinion relating to the tires of the tractor-trailer

driven by McCrite and operated by St. James. Plaintiff's expert also did not offer an opinion about any alleged deficiency by St. James with respect to St. James' training, use of, or operation of super-single tires on McCrite's tractor. Defendants' UMF No. 11.

-- At the time of the accident, McCrite was within his mandated hours of service time limit. Defendants' UMF No. 18.

-- No issues were noted by the Oklahoma Highway Patrol regarding the tractor or trailer being operated by McCrite, or relating to McCrite's hours of service. Defendants' UMF No. 19.

Up against these undisputed facts, the portion of plaintiff's brief which responds to defendants' argument that there is no evidence to support an award of punitive damages against St. James (doc. no. 45, pp. 22-23 of 24) makes just a few, brief arguments.

Plaintiff argues that the Federal Motor Carrier Safety Administration requires preventable accident training but that St. James does not provide such training. *Id.* at p. 22 of 24. Plaintiff cites his expert's report as support for plaintiff's contentions regarding this alleged lack of training, but the report does not specifically state that St. James completely failed to provide preventable accident training. For example, in one spot the report refers to testimony about "refresher-type training." Doc. no. 45-2, p. 27 of 30. As to training generally, the report states, "There is little evidence in Mr. McCrite's personnel file regarding driver safety training administered to him while employed at St. James." *Id.* at p. 14 of 30. "Little evidence," however, is not the same thing as no evidence. The report goes on: "Training would likely have given or reinforced the knowledge and skills for this driver that would have prevented this crash." *Id.* Even giving plaintiff the benefit of every possible doubt and inference, this "would likely" statement can only be described as a statement of opinion which is not the most forceful.

8

The report states that "A CDL [commercial driver's license] does not indicate that the holder is a trained or experienced truck or bus driver." *Id*. at p. 13 of 30. Later, the report states, "It is my opinion this was a preventable accident on the part of Mr. McCrite, an employee driver of St. James Transportation, LLC who failed to maintain a proper forward lookout, maintain a proper following distance and failed to keep his assigned truck tractor and semi-trailer under control to avoid traffic conditions ahead. He should have been keeping a proper forward lookout and managed the space ahead of his vehicle." *Id*. at p. 28 of 30. The report states, "The motor carrier, St. James Transports, LLC, was responsible for ensuring the safe operation of its driver and the equipment operating under its authority. This included providing driver training and reinforcing the required knowledge and skills as prescribed in all state CDL handbooks and manuals." *Id.* at 29 of 30.

None of this evidence would support an award of punitive damages against St. James for negligent failure to train (or for any other allegedly negligent conduct by St. James).

The other main argument which plaintiff makes in response to defendants' contention that there is no evidence to support punitive damages, is that "a reasonable person may view the idea of driving an 80,000 lb. Rig for almost 7 hours straight without a supervisor requiring a break as reckless." Doc. no. 45, 22 of 24. It is undisputed, however, that McCrite was within his mandated hours of service at the time of the accident. For this and other reasons, plaintiff has identified no evidence sufficient to support an award of punitive damages against St. James with respect to any theory of negligent conduct by St. James related to permitting McCrite to drive for almost seven hours straight.

After consideration of these and other arguments made by the plaintiff, and after a review of the record as a whole, the court finds that plaintiff has identified no facts (or reasonable inferences therefrom) which, if proven, would support an award

9

of punitive damages against St. James based on any type of negligent conduct by St. James (or McCrite for that matter). Plaintiff has identified no evidence of recklessness on the part of St. James (or McCrite), and no evidence that St. James (or McCrite) acted intentionally and with malice towards others. Defendants are therefore entitled to summary judgment in their favor on plaintiff's claim seeking to impose punitive damages on St. James. This means that no matter the impact of Jordan on plaintiff's direct negligence claims against St. James (an issue which is addressed next), there would still be no basis for permitting any punitive damages claim to go to the jury.

*Jordan v. Cates*

The court now turns to St. James' and McCrite's argument that Jordan v. Cates precludes the direct negligence claims alleged against St. James.

Jordan v. Cates and numerous orders and decisions applying Jordan, hold that when an employer stipulates to liability in the manner that St. James has done in this case, the result is that "any other theory for imposing liability on the employer [is] unnecessary and superfluous." 935 P.2d at 293.[5] St. James has so stipulated here. *See*, St. James' Answer, doc. no. 7, ¶ 38 (admitting McCrite was in the course and scope of his employment with St. James when the accident occurred); and defendants' moving brief, doc. no. 35, p. 9 of 15 ("St. James further stipulates liability, if any, of Mr. McCrite resulting from the accident would be vicarious," citing Jordan). Defendants therefore contend that St. James is entitled to summary judgment on allegations that St. James was negligent in its hiring, training,

---

[5] Again, the complete passage from Jordan is as follows. "Our holding today is limited to those situations where the employer stipulates that liability, if any, would be under the *respondeat superior* doctrine, thereby making any other theory for imposing liability on the employer unnecessary and superfluous. Because vicarious liability can include liability for punitive damages, the theory of negligent hiring and retention imposes no further liability on employer." 935 P.2d at 293.

10

supervision and retention of McCrite, as well as on allegations that St. James negligently entrusted the tractor-trailer rig to McCrite.

Before reaching the Jordan issues, a preliminary issue must be addressed with respect to the negligent entrustment claim. This is because defendants argue, in their reply brief, that no such claim has been alleged in this action.

The complaint never uses the word "entrustment" or the phrase "negligent entrustment." However, the complaint goes on at length about the alleged fact that St. James never informed McCrite that he would be driving a big rig with super single tires; about the alleged characteristics of super single tires; about the alleged fact that St. James never advised McCrite about differences in performance and maintenance relative to super single tires; and about the alleged fact that St. James never trained McCrite regarding differences between the performance and maintenance of super single tires. *See*, doc. no. 1, ¶¶ 8-24. All of these allegations lead up to the further allegation that "when Defendant McCrite began his trip the morning of April 9th, he was behind the wheel of a vehicle, that was from his perspective of driving Rigs for decades with dual tires, that was [sic] unpredictable and unreliable." Doc. no. 1, ¶ 24.

Furthermore, in paragraph 36 of the complaint, plaintiff alleges that St. James is "directly liable for its own negligent actions, including but not limited to the actions and omissions by SJT [St. James Transports] and LDT [L. Davis Transports] of failing to train, notify and supervise Defendant McCrite with regard to the different equipment used on the rig." *Id.* at ¶ 36 (emphasis added). The complaint then alleges that "SJT and/or LDT were directly negligent in other ways, such as failing to train and supervise Defendant McCrite besides the equipment issues." *Id*. (emphasis added). Thus, the complaint does not purport to set out each and every theory of liability for direct negligence which is alleged against St. James.

In addition, and importantly, throughout this litigation defendants have referred to plaintiff's claims as including a negligent entrustment claim.[6] For example, St. James' motion to dismiss filed on December 9, 2016, refers repeatedly to plaintiff's claims of "negligent hiring, training, retention, supervision and entrustment." Doc. no. 8, pp., 2, 3, 4, 5 and 6 of 7. Citing paragraph 36 of the complaint, St. James' motion to dismiss states that "Plaintiff's Complaint also includes claims of negligent hiring, training, retention, supervision and entrustment against St. James. *See*, Complaint, ¶ 36." Doc. no. 8, p. 5 of 7. The moving brief now before the court likewise refers (approximately ten times) to entrustment claims, and makes the statement that "Plaintiff's Complaint also includes claims of negligent hiring, training, retention, supervision and entrustment against St. James," again citing paragraph 36 of the complaint. Doc. no. 35, p. 9 of 15. It clearly comes as no surprise to defendants that plaintiff contends his complaint includes a negligent entrustment claim. Indeed, defendants proceeded on that assumption until filing their recent reply brief. This fact and the open-ended manner in which the direct negligence claims are referred to in the complaint, cause the court to construe the complaint as alleging a negligent entrustment claim against St. James.

---

[6] In an earlier round of briefing, plaintiff's brief in response to St. James' motion to dismiss included a statement that "should the Court conclude that any of the theories below are not plead [sic] appropriately, plaintiff requests an opportunity to amend his Complaint to address such concern." Doc. no. 10, p. 10 of 27. Plaintiff then proceeded to outline his claims against St. James, including discussion of negligent entrustment. Despite the prompt in plaintiff's response brief which suggested that now would be the time if defendants sought to make an issue of exactly what claims plaintiff had alleged, St. James' reply brief said nothing about plaintiff not having alleged negligent entrustment and went on to address such a claim. Doc. no. 12 at p. 2, 3, 4 of 5.

With that preliminary issue decided, the next question is whether the negligent entrustment claim and any of the other direct negligence claims alleged against St. James, survive Jordan.

Plaintiff argues that Jordan is distinguishable and should be limited to its facts in various ways, including to intentional torts. However, almost all courts that have considered this question have disagreed with plaintiff's contention in this regard.[7]

Moreover, the Oklahoma Supreme Court stated as follows in N.H. v. Presbyterian Church, 998 P.2d 592 (Okla. 1999).

> Employers may be held liable for negligence in hiring, supervising or retaining an employee. In such instances, recovery is sought for the employer's negligence. The claim is based on an employee's harm to a third party through employment. An employer is found liable, if -- at the critical time of the tortious incident --, the employer had reason to believe that the person would create an undue risk of harm to others. … <u>In Oklahoma, the theory of recovery is available if vicarious liability is not established.</u>

---

[7] Judge Miles–LaGrange issued an order in Ramiro v. J.B. Hunt Transport Servs., Inc., Case No. CIV–04–1033 (April 8, 2005), which differs from the majority's interpretation of Jordan. Judge Miles-LaGrange concluded that the language in Jordan's syllabus referencing the underlying battery demonstrates the Oklahoma Supreme Court's intention to limit its holding to only intentional torts. However, this court agrees with later orders rejecting that approach. 'Viewing the syllabus in light of the circumstances of the case, this court reaches the opposite conclusion and finds no such distinction or requirement in Jordan.' Avery, 2012 WL 6016899 at *3 (citing Eckels v. Traverse, 1961 OK 139, 362 P.2d 683, 686). Had the Oklahoma Supreme Court intended to limit Jordan's holding to intentional torts, it would have expressed that in the body of its opinion. Instead, although the Court clearly "limited [its holding] to those situations where the employer stipulates that liability, if any, would be under the respondeat superior doctrine," it did not simultaneously limit its holding only to intentional torts. *See, e.g.,* Jordan, 935 P.2d at 293." (This footnote is taken from Judge Cauthron's order in Bryson v. Sierra Metals, Inc., No. CIV-12-839-C, 2013 WL 1397826, at *1 (W.D. Okla. Mar. 25, 2013), quoted here because the undersigned agrees with it.)

998 P.2d at 600 (emphasis added, footnotes omitted; the footnote to the underlined sentence cites Jordan).

Thus, N.H. v. Presbyterian Church indicates the Oklahoma Supreme Court's understanding that, under Jordan, negligent hiring, supervision and retention claims are available against an employer *if* vicarious liability is not established.[8] That is not the situation presented here, given St. James' stipulation.

The undersigned stated as follows in Guerrero v. Meadows, 2014 WL 10962065 (W.D. Okla. October 15, 2014).

> It is not the prerogative of this court, sitting in diversity jurisdiction, to avoid or qualify a rule which has been announced by the Oklahoma Supreme Court, then reaffirmed by the Court without qualification. Accordingly, absent some indication from the Oklahoma Supreme Court that the rule stated in Jordan should be qualified in one or more of the ways which plaintiffs suggest, which has not occurred, this court simply applies the rule.

2014 WL 10962065 at *4.

All of that said, the Oklahoma Supreme Court has recently granted two writs which indicate that Court is carving back the broad language of Jordan by declining to apply Jordan to negligent entrustment claims.

The T. Le, Case No. 116,243 (September 18, 2017), grants a writ of prohibition directing the trial judge not to enforce an order which granted defendant

---

[8] "[T]his limitation on employer liability," Ferrell v. BGF Global, LLC, 2016 WL 4402050 at *2 (W.D. Okla. August 18, 2016), has not only been recognized numerous times by various courts located within Oklahoma, it has also been recognized by the United States Court of Appeals for the Tenth Circuit. *See*, *e.g.*, Huntley v. City of Owasso, 497 Fed. Appx. 826, 834 (10th Cir. 2012) (under Oklahoma law, claims of negligent hiring, training and supervision available only when vicarious liability not established), unpublished; *and see,* fourteen federal district court cases cited in Hunter v. New York Marine & General Ins. Co., CIV-16-1113-W, doc. no. 22 in that case at p. 4, n.5.

partial summary judgment on petitioner's claim of negligent entrustment. Brantley v. Prince, Case No. 115,434 (December 5, 2016), grants a writ of mandamus directing the trial judge to permit an amendment which would add a negligent entrustment claim.[9]

Cryptic though these orders are (especially the one in Brantley), it is clear that these orders are not intended to impact the law regarding negligent hiring, training, supervision or retention claims. This is clear because these orders cite Sheffer, a case which states that liability for negligent entrustment does not depend on the relationship between the parties, such as an employment relationship, but arises, instead, from the act of entrustment of the motor vehicle. Sheffer, 306 P.3d 544, 550. The order in The T. Le, quotes Sheffer for the proposition that "whether the negligent act was done during the course and scope of an employee's employment is not relevant to the negligent entrustment analysis." The T. Le then states, "Accordingly, Jordan v. Cates…does not apply."

Thus, while The T. Le and Brantley are not intended to impact the law regarding negligent hiring, training, supervision or retention claims, negligent entrustment claims are another matter. As has been discussed, numerous decisions (including at least one by the undersigned – Guerrero – in 2014), relying on Jordan, have thrown out negligent entrustment claims where the defendant – typically a trucking company – admits vicarious liability. The Oklahoma Supreme Court's orders in The T. Le and Brantley were entered after the decision of the undersigned in Guerrero – The T. Le about a month ago and Brantley in December of 2016. Obviously, the two Supreme Court orders are not full dress opinions. To put it

---

[9] For the parties' convenience, the court notes that these two Oklahoma Supreme Court orders have been filed of record in another federal case which is currently pending before the undersigned, Payne v. Sesley Trucking, LLC, CIV-16-1235-F. The Supreme Court's order in The T. Le appears at doc. no. 28-1 in the Payne case. The Supreme Court's order in Brantley appears at doc. no. 26-1 in the Payne case.

15

mildly, they provide no extended explanation as to why the decision in Jordan is not to be construed in the way numerous courts have construed it, as applied to negligent entrustment claims. Even though these two orders (not officially published so far as this court is aware) are not full dress opinions formally proclaiming the common law of the State of Oklahoma, they, at a minimum, provide new textual material obligating this court to take a fresh look at how the Supreme Court will treat the Jordan/negligent entrustment issue when it comes before that Court again for plenary treatment.

> The Court of Appeals has explained this court's duty to predict as follows:
>
> Consequently, we "must ... attempt to predict how [Wyoming's] highest court would interpret [the issue]." Squires v. Breckenridge Outdoor Educ. Ctr., 715 F.3d 867, 875 (10th Cir.2013); *see* Pehle v. Farm Bureau Life Ins. Co., 397 F.3d 897, 901 (10th Cir.2005) ("Because Wyoming has not directly addressed this issue, this court must make an Erie-guess as to how the Wyoming Supreme Court would rule."). We may "consider all resources available" in doing so, "including decisions of [Wyoming] courts, other state courts and federal courts, in addition to the general weight and trend of authority." In re Dittmar, 618 F.3d 1199, 1204 (10th Cir.2010) (internal quotation marks omitted).
>
> "Under our own federal jurisprudence, we will not trouble our sister state courts every time [an unsettled legal question in a diversity action] comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." Pino v. United States, 507 F.3d 1233, 1236 (10th Cir.2007); *accord* Colony Ins. Co. v. Burke, 698 F.3d 1222, 1236 (10th Cir.2012). We see such a clear and principled path here.

Cornhusker Cas. Co. v. Skaj, 786 F.3d 842, 852 (10th Cir. 2015).

This court concludes that the Supreme Court's two orders provide "such a clear and principled path." The order in The T. Le, albeit terse, tells the undersigned

that, by a 7-2 majority,[10] the Oklahoma Supreme Court has concluded that Jordan is either bad law – a weed in the garden of the common law – or has been misapplied by the lower courts (or maybe both). This court concludes that when the next opportunity arises, the Oklahoma Supreme Court will hold that, at least as applied to trucking companies and their drivers,[11] an admission of vicarious liability will not preclude a negligent entrustment theory of recovery.

On the other hand, as previously stated, the recent orders do not appear to change the law regarding the impact of an employer's stipulation on negligent hiring, training, supervision or retention claims, all of which (unlike entrustment claims) depend upon an employment or agency relationship between the driver and the entity that put the driver behind the wheel. The court concludes that plaintiff's negligent entrustment claim survives this order for trial while the other types of direct negligence theories of liability alleged against St. James do not. The distinction between the negligent entrustment theory, on one hand, and the negligent hiring, supervision or retention theory, on the other hand, may seem to be a fairly fine one, but the Court's unequivocal expression in N.H. v. Presbyterian Hospital, 998 P.2d at 600, precludes identical treatment of the two types of theories.

Finally, the court recognizes that St. James has argued, in its reply brief, that there is no evidence to support the surviving negligent entrustment claim. That may be true, as it appears from plaintiff's briefing that plaintiff may no longer base his case on matters related to the super single tires, having shifted his theory of recovery to McCrite's failure to keep an adequate look-out and an adequate space between

---

[10] Only two Justices who were on the Oklahoma Supreme Court when Jordan was handed down in 1997 were still on the court when it entered its orders in The T. Le and Brantley. Justice Watt concurred in both The T. Le and Brantley and, apparently, in Jordan. Justice Kauger concurred in the result in Jordan (without writing separately) and concurred in both of the recent orders.

[11] *See*, 47 O.S. 2011 § 6-307 (liability for knowingly permitting the operation of a motor vehicle by a person not qualified), cited in The T. Le.

him and plaintiff's vehicle.  But the court does not reach this lack-of-evidence argument because defendants did not raise it in their moving brief, mentioning it for the first time in their reply brief to which the plaintiff has not had a chance to respond.  When a reply brief includes new material, the court may either permit a sur-reply or, in granting summary judgment for the movant it may refrain from relying on the new material contained in the reply brief.  Doebele v. Sprint/United Management Co., 342 F.3d 1117, 1139 at n.13 (10th Cir. 2003).  Here, the court opts not to address the new argument, which was not timely presented.[12]

*Summary of Rulings*

*On Defendants St. James' and McCrite's Motion for Partial Summary Judgment*

After careful consideration, the court makes the following rulings with respect to St. James' and McCrite's motion for partial summary judgment.

-- St. James' and McCrite's motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**, as follows.

-- Based on the record before the court, there is no triable issue regarding any claim for punitive damages against St. James, the only defendant against whom the

---

[12] The court does not call for a sur-reply brief for several reasons.  Calling for a sur-reply would require an entirely new round of briefing on a new topic.  A sur-sur-reply brief would possibly be required, making it difficult to keep to the schedule. (As previously stated, this case is set for trial on the December 5, 2017 docket.  Pretrial filings due in November.)  In addition, there is no obvious reason why defendants could not have raised this lack-of-evidence issue in their moving brief. (The moving brief sought judgment on all direct negligence claims alleged against St. James, but only on the basis that such claims were barred by Jordan as a matter of law.  Defendants did not argue that there was insufficient evidence to support any negligence theories.)

One other matter bears mention here.  To prove a submissible negligent entrustment claim, plaintiff must satisfy the jury that St. James knew or reasonably should have known that McCrite, who, so far as the record shows, has been involved in only two accidents in nearly five decades of professional driving, would be careless, reckless or incompetent to drive the truck.  *See*, OUJI No. 10.16.  In a case which is, aside from the negligent entrustment claim, a garden variety truck-car rear-ender, the court can think of several ways in which the assertion of an ill-considered negligent entrustment claim could backfire with the jury – and perhaps with the court.

18

complaint seeks punitive damages. St. James is therefore **GRANTED** summary judgment in its favor on plaintiff's claim for punitive damages.

-- St. James' and McCrite's motion for partial summary judgment is **DENIED** to the extent that it asks the court for judgment on the negligent entrustment claim. *See generally*, orders of the Oklahoma Supreme Court in The T. Le and Brantley.

-- St. James' and McCrite's motion for partial summary judgment is **GRANTED** on all *other* theories of direct negligence which are alleged against St. James.

-- These rulings mean that the negligent entrustment claim is the only direct negligence claim against St. James which survives for trial. (Of course, St. James has stipulated that it has liability for any negligence on the part of McCrite.)

Part IV

Plaintiff Gordon's Motion Seeking an Order Which Declares
That the Damages Cap of 23 O.S. 2011 § 62.1 is Unconstitutional.

*(Doc. no. 37)*

Plaintiff moves for an order declaring the damages cap of 23 O.S. 2011 § 62.1 unconstitutional.

It is a fundamental proposition of law that constitutional issues which need not be decided should not be reached -- a doctrine of avoidance which applies to the entire federal judiciary. Clinton v. Jones, 520 U.S. 681, 690 and n.11 (1997). Otherwise stated: "[I]f it is not necessary to decide more, it is necessary not to decide more...." PDK Labs., Inc. v. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment).

Here, it may never be necessary to decide the constitutionality of the damages cap depending on the amount of a jury award, if any. Accordingly, the court takes

the plaintiff's motion under advisement. A ruling on plaintiff's motion to declare the damages cap unconstitutional is **RESERVED** to a later stage.

IT IS SO ORDERED this 24th day of October, 2017.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

16-1327p006 rev .docx